IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 17, 2014 Session

## BILLY D. SIZEMORE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Perry County**
**No. 2011-CR-42      Robbie T. Beal, Judge**

**No. M2013-01378-CCA-R3-PC - Filed August 21, 2014**

Petitioner, Billy D. Sizemore, was convicted of theft over $1,000 and sentenced to twelve years as a career offender. Petitioner filed the instant petition for post-conviction relief, in which he alleged that he received ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied relief. On appeal, petitioner argues that he received ineffective assistance of counsel when trial counsel: (1) failed to challenge the value of the stolen goods and (2) failed to seek a continuance after the State filed a late notice of intent to seek enhanced punishment. After our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and J. ROBERT CARTER, JR., SP. J., joined.

Steven Garner (on appeal); and Talmage M. Woodall (at hearing), Franklin, Tennessee, for the appellant, Billy Sizemore.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Lacy Wilber, Assistant Attorney General; Kim R. Helper, District Attorney General; and Stacey Brackeen Edmonson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Facts

### A. Facts from Trial

In our opinion disposing of petitioner's direct appeal, this court summarized the facts from petitioner's trial on June 12, 2009, as follows:

> Eugene Grinder, the victim in this case, owns property in Perry County, Tennessee. About eight years before trial, Mr. Grinder purchased about 5,000 feet of six-foot wire fencing in seventy-two, irregular-sized rolls. Some of the rolls were bigger, and some were smaller. He paid $3,000 for the fencing. He left the wire fencing outside on this property. In January 2008, someone called the victim and told him they found a roll of the wire fencing. When he arrived at his property, the victim discovered that the majority of the wire fencing had been taken and just a few pieces of it were left.
>
> Christopher Reeves, Appellant's co-defendant, testified that he was incarcerated at the time of trial. He stated that in January 2008, he and Appellant stole rolls of wire fencing from a property in Perry County. The two men loaded some of the wire into a truck. Mr. Reeves did not know what happened to the wire fencing because he returned home after loading it. The two men returned and loaded up more wire fencing into a red Chevy pick-up truck they borrowed from Herbert Dell Potter. On their way to Mr. Potter's house, the truck broke down. After the truck was repaired, they returned to Mr. Potter's house with the wire fencing. Mr. Potter was living with Kelly Pilatti at the time. The wire fencing was sold to Heather Georges and Trade Time, a local radio show.
>
> Mr. Potter and his wife, Kelly Potter, recalled that Appellant borrowed Mr. Potter's pick-up truck in January 2008. When Appellant returned with the truck, the back of the truck was filled with twenty-five to thirty rolls of wire fencing about six feet high. The wire fencing was rusty. Appellant told Mr. Potter that the wire fencing was left over from a job erecting a fence. Mr. Potter and his wife admitted that they did not know where Appellant obtained the wire.
>
> Lewis County Sheriff's Sergeant Tommy Franzen was informed that wire fencing had been stolen from Mr. Grinder's property. He went to the

victim's property and saw that some wire was still there. He contacted scrap metal places to see if anyone had attempted to sell any wire fencing. He was sent to the Pilatti's residence. There Sergeant Franzen discovered twenty-one rolls of wire fencing. Mr. Grinder identified the rolls as belonging to him. While there, he spoke with Mr. Pilatti and both of the Potters. Appellant and his co-defendant were brought into the sheriff's department for another reason, and Sergeant Franzen interviewed them about the wire fencing. Appellant told Sergeant Franzen he bought the wire fencing at a store for $85 a roll.

Heather Georges was a close friend of Appellant. She recalled that she purchased a few rolls of wire fencing from Appellant in late December 2007 or early January 2008. She purchased the wire fencing for use in her dog breeding business. When she returned from a dog show in Georgia, the wire fencing had been delivered. The wire fencing was rusty[,] and the rolls were all different sizes. On January 22, 2008, the police questioned her regarding her purchase of the wire fencing. When she learned it had been stolen, she gave it to the authorities.

Joey Holt heard an advertisement for wire fencing on the Trade Time radio program. He purchased some wire for $25 a roll in January 2008. After he saw a newspaper article regarding wire fencing similar to that he purchased, he contacted the authorities. The sheriff's department took the wire.

On January 24, 2008, Perry County Sheriff's Detective Mike Chandler was contacted by the Lewis County Sheriff's Department. The Lewis County Sheriff's Department provided the results of their investigation into the stolen wire fencing to Detective Mike Chandler. As a result, Detective Chandler obtained warrants for Appellant's arrest.

The Perry County Grand Jury indicted Appellant for one count of theft over $1,000. At the conclusion of a jury trial held on June 12, 2009, Appellant was found guilty as charged. The trial court sentenced Appellant to twelve years as a career offender. Appellant filed a timely notice of appeal.

*State v. Billy D. Sizemore*, No. M2009-01827-CCA-R3-CD, 2011 WL 345854, at *1-2 (Tenn. Crim. App. Jan. 31, 2011).

## B. Facts from Post-Conviction Hearing

At the February 15, 2013 hearing,[1] petitioner testified that he met with trial counsel three times prior to trial. He stated that trial counsel told him that "the case carried four years." Petitioner also identified a notice to seek an enhanced punishment and asserted that he did not see this document until he "got all of [trial counsel's] papers from [appellate counsel]." Petitioner explained that while the document had been filed on June 12, 2009, he did not see the document before his trial. He asserted that trial counsel never explained that the State planned to seek an enhanced punishment if petitioner was convicted. Petitioner averred that if he had known he was going to receive twelve years instead of four years, he may have pleaded guilty instead of going to trial. Petitioner also identified a Perry County Sheriff's Department incident report and explained that the report stated that the value of the stolen wire was seven dollars each and that sixty-four rolls of wire were found, which altogether totaled $448. Petitioner testified that trial counsel never showed him this document prior to trial. Petitioner stated that trial counsel never argued that the State's valuation of the fencing was incorrect and never cross-examined the investigating officer or the victim about the value of the wire.

During cross-examination, petitioner asserted that his trial strategy was to prove his innocence but that if he had known he would be sentenced as a career offender, he might have considered a plea agreement for four years. Petitioner conceded that he received a copy of his criminal history as part of discovery but asserted that trial counsel did not tell him that his nine prior felonies could be used to enhance his sentence. Petitioner acknowledged that trial counsel filed a motion asking for a jury instruction regarding the jury's ability to determine the value of the wire fencing.

Trial counsel testified next that he had been an attorney since 2004 and primarily practiced juvenile, domestic, and criminal law. He stated that he was appointed to represent petitioner in general sessions and circuit court. Trial counsel explained that he requested and received discovery in petitioner's case. Although he did not specifically remember discussing petitioner's criminal history with petitioner, he said his normal practice was to review each conviction in the criminal history with his client and then explain the possible range of punishment using a chart. Trial counsel testified that he did not know if he actually used the words career offender but that he informed petitioner that "if found guilty, he would be doing a lot more than five years." Trial counsel explained that at the three office meetings with petitioner, they would have discussed petitioner's innocence and the trial strategy. His

---

[1] Petitioner has abandoned several of the issues he raised in the post-conviction court on appeal; therefore, our recitation of the facts from the post-conviction hearing will be limited to the issues raised on appeal.

trial strategy was to show that all the evidence, other than the co-defendant's testimony, was circumstantial and that there was no proof that the wire in petitioner's possession was the same wire that was stolen. He explained that the value of the wire did not affect their strategy to prove innocence and that he requested the special jury instruction on value so that the jury could consider it. However, the main focus was on petitioner's innocence. Trial counsel acknowledged that he filed several motions in limine regarding petitioner's prior convictions.

During cross-examination, trial counsel agreed that determining the value of stolen goods is important when handling a theft case because the value determines the possible length of punishment. Trial counsel did not remember cross-examining the victim or the investigating officer about the value of the stolen wire. He also did not remember reading the incident report in this case but asserted that if it was produced in discovery, he read it. Trial counsel conceded that there was a disparity between the victim's testimony and the incident report regarding the value of the stolen wire and that he did not file a motion to dismiss based on the disparity.

After hearing this testimony, the trial court denied post-conviction relief, finding that trial counsel had informed petitioner of his sentencing exposure and that "even though [trial counsel] may not have specific recollection [of] it, the Court accepts his statement of his routine practice." The court also stated:

> It's difficult for the Court, in some regard, to determine whether an attorney has specifically advised a client on a fairly detailed issue, such as a notice of enhancement.
>
> . . . .
>
> The Court, again, believes that in this particular case, there is enough to convince the Court that that was provided to Mr. Sizemore. That even though [trial counsel] may not have specific recollection [of] it, the Court accepts his statement of his routine practice. In this case, he filed numerous motions addressing the previous convictions . . . that the defendant had. It would be outside the realm of logic that [trial counsel] would file all of these motions relating to the use of the defendant's criminal record at trial, but not advise the defendant that the prior convictions could be used against him.
>
> Respectfully to the defendant, the Court finds it very difficult to believe that the defendant, just in a common sense framework, would not believe that his own record, his own extensive criminal record, could be used against him

for purposes of the sentencing. This defendant is no stranger to the court proceedings, and it would again defy the Court's logic to some degree to believe that the defendant was caught by surprise that his previous felony convictions could actually be used against him. Again, that's a very disingenuous type of statement to make[,] and the Court doesn't accept it.

. . . .

The biggest issue . . . is did [trial counsel] make enough of the issue as it relates to the value of the property. That one particular point could give the Court considerable pause with regard to this proceeding if I believe that [trial counsel] just let a fairly important issue such as valuation slide by him. . . . We did hear evidence of all sorts and all types as to the valuation of this property. [Trial counsel] questioned witnesses, to some regard, with regard to the property. With some regard, he didn't have to. It was being brought out by the State. And secondly, the Court agrees with the State that this wasn't the main defense that [trial counsel] was proceeding on. His defense wasn't valuation of property. His defense was Mr. Sizemore didn't do it, he had nothing to do with it.

It is difficult from an attorney's perspective to argue alternative theories of innocence to a jury. And as a matter of trial strategy, [trial counsel] moved forward with the theory that his client was innocent of the charge completely and focused in on that. My court's not going to go behind [trial counsel] and try to determine what trial strategy was more appropriate. The fact is, is that he made that decision. And he made that decision upon consulting his client. And the Court believes that that decision was reasonable.

## II. Analysis

Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to challenge the value of the stolen goods and failed to seek a continuance after the State filed a late notice of intent to seek enhanced punishment. The State responds that the post-conviction court properly denied the petition for post-conviction relief. We agree with the State.

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right

guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . .

-7-

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

## B. Value of Stolen Goods

The post-conviction court concluded that trial counsel's conduct at trial was reasonable based on the trial strategy. This determination is supported by the record. While value is an important issue in a theft case, trial counsel proceeded on a theory of innocence at trial and properly challenged the State's evidence in that regard. Trial counsel explained that the value of the wire did not affect the strategy to prove innocence and that he requested the special jury instruction on value so that the jury could consider it. However, the main focus was on petitioner's innocence.

On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell*, 185 S.W.3d at 326 (citing *Strickland*, 466 U.S. at 689). Furthermore, this court gives deference to matters of trial strategy as long as the strategy is based on informed and adequate representation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel proceeded on a valid and sound trial strategy of innocence, and we determine that, in this context, his failure to rely on the incident report for valuation did not fall below an objective standard of reasonableness under the prevailing professional norms. In addition, the trial court also stated, and the trial transcripts reflect, that the court heard evidence "of all sorts and all types as to the valuation of this property." The jury was also instructed as follows:

The State has the burden of proving this value beyond a reasonable doubt, as defined in these instructions.

The jury will fix the value of property or services obtained, along with its verdict, by indicating which of the following ranges the value falls within:

(1) $1,000 or more, but less than $10,000; or

(2) more than $500, but less than $1,000; or

(3) $500 or less.

Therefore, petitioner has failed to show that even if the value had been challenged, there is a reasonable probability that the outcome of the trial would have been different. Petitioner is without relief as to this issue.

## C. Notice of Enhanced Punishment

Petitioner also argues that trial counsel was ineffective because he failed to request a continuance after the State filed a late notice of intent to seek enhanced punishment. Specifically, he argues that the notice was ambiguous because the title had the words "Multiple Offender" whereas the body of the notice stated "Career offender" and that, furthermore, because of the late filing, counsel never informed petitioner that he might be sentenced as a career offender.[2] However, the post-conviction court concluded that petitioner was "no stranger to the court proceedings, and it would again defy the Court's logic to some degree to believe that the defendant was caught by surprise that his previous felony convictions could actually be used against him." The court also determined that trial counsel had advised petitioner of his sentencing exposure because it would defy logic that trial counsel would file numerous motions to limit the use of petitioner's prior convictions at trial yet not inform petitioner of his sentencing exposure due to those same convictions. Furthermore, although he did not specifically remember discussing petitioner's criminal history with petitioner, he said his normal practice was to review each conviction in the

---

[2] We note that petitioner has reframed this issue on appeal. In the post-conviction court, petitioner argued that due to the late notice of intent to seek enhanced punishment, trial counsel did not properly advise petitioner of his sentencing exposure as a career offender. It is only on appeal that petitioner argues that it was ineffective for trial counsel not to file a motion to continue. However, instead of waiving this issue altogether, we will address the underlying issue of whether trial counsel was ineffective for failing to properly advise petitioner of his sentencing exposure because the issue essentially rests on the same grounds regardless of its presentation.

criminal history with his client and then explain the possible range of punishment using a chart. Trial counsel also testified that he did not know if he actually used the words career offender but that he informed petitioner that "if found guilty, he would be doing a lot more than five years."

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn*, 202 S.W.3d at 116). Even if the notice of enhancement was ambiguous, petitioner has failed to show trial counsel was deficient because petitioner was well aware of his nine prior felony convictions and because trial counsel had previously explained petitioner's sentencing exposure. Petitioner is without relief as to this issue.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE